IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL D. RIX, )
)
        Plaintiff, )
)
v. )
)   Case No. 10-1224-CM
)
TERRY MCCLURE, in his official )
capacity as administrator of )
Cowley County Department of Corrections, )
BRYAN C. DAVIS, GREG POWERS, and )
KRISTIE POWERS, )
)
        Defendants. )
)

## MEMORANDUM AND ORDER

Plaintiff brings this action, proceeding *pro se* and *in forma pauperis*, alleging violations of 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA") against Terry McClure, in his official capacity as administrator of Cowley County Department of Corrections; Bryan C. Davis; Greg Powers; and Kristie Powers. Each defendant has filed a motion to dismiss (Docs. 22, 27, 30, and 34). Plaintiff subsequently filed a Motion to Amend (Doc. 54).

**I.    Factual Background[1]**

Plaintiff's complaint makes the following allegations. Beginning on May 11, 2009, plaintiff was incarcerated at the Cowley County Jail ("Jail"). Although there is one day nurse/security employee at the Jail, it is a new facility, without a medical staff or an infirmary. Plaintiff arrived at the

---

[1] Plaintiff makes additional factual allegations regarding his claims in his responses to defendants' motions. However, a brief in response to a motion to dismiss is not the proper place to bolster allegations made in a complaint. In ruling on defendants' motions to dismiss, the court has considered only the allegations in plaintiff's complaint, and not the additional details provided in plaintiff's brief. *See, e.g., Gilbert v. Steed*, No. 07-3213-CM, 2008 WL 4826142, at *3 (D. Kan. Nov. 6, 2008).

-1-

medical center with a number of medical problems. He is diabetic and has "multiple complications, including heart damage, Bi-lateral (sic) neurophysiology as well as myopathy." (Doc. 9, at 2.) Before plaintiff was incarcerated, the Jail staff was advised that there were very serious medical issues regarding plaintiff's care. Because plaintiff needed leg braces and a cane, he was housed in the holding area of the Jail. "[P]laintiff was refused required medication that was provided at the time of incarceration due to the medical technician having no training in the use of Lantus Insulin." (Doc. 9, at 2.)

Before breakfast on May 12, plaintiff's blood sugar became dangerously high—"IE: 294." (Doc. 9, at 2.) Plaintiff requested medical assistance, but because there were no medical personnel available, the security staff assisted him. That morning, plaintiff's blood sugar level remained elevated at 237. No action was taken to lower plaintiff's blood sugar. "[P]laintiff was refused necessary and appropriate diabetic meals." (Doc. 9, at 3.) The facility dietician informed plaintiff that diabetic meals were not available. Plaintiff's blood sugar level remained above 200 due to the lack of insulin.

On May 13, plaintiff's blood sugar level was 519. Medical staff was unavailable to assist plaintiff, and the on-call medical personnel failed to respond to pages and calls. Later that morning, plaintiff was transported to the hospital. At the hospital, plaintiff was treated for Ketoacidosis—"a condition created when appropriate insulin doses are not administered properly." (Doc. 9, at 3.) Several of the medical technicians informed plaintiff that they were unfamiliar with the use of Lantus. "After plaintiff's return to the Jail, Nurse Powers informed the plaintiff that things would get better." (Doc. 9, at 3.)

On May 14, a medical technician approached plaintiff to administer insulin. But, according to plaintiff, he or she combined "a lethal combination of Humolog Regular Insulin and Lantus Insulin." (Doc. 9, at 3.) This "combination causes coma and death and is fully explained in the written material

that accompanies the [L]antus Insulin and is also clearly marked on the box." (Doc. 9, at 3.) Plaintiff's primary care physician, Dr. Dirk Smith, insisted plaintiff receive "all medication that was not provided to plaintiff due to facility policy." (Doc. 9, at 3.)

On May 15, "the defendants failed to provide medical coverage[, which] resulted in plaintiff not receiving appropriate medications such as insulin." (Doc. 9, at 3.) "[P]laintiff was informed that there would be no nursing staff [because] Nurse Powers was across the street smoking meat for the Sheriff's Department cook out [sic]." (Doc. 9, at 3.) At approximately one o'clock, plaintiff became ill from a lack of insulin. The security staff tested his blood sugar level, which tested at 368. In response to several calls, Nurse Powers sent his wife, Kristie Powers, to treat plaintiff. Ms. Powers is not an employee of the Jail. Ms. Powers was unable to review plaintiff's chart to apply the appropriate medical care and did not examine plaintiff.

On May 16, plaintiff was informed that there were only three medication calls because there was no medication technician working in the evening. Plaintiff requires two types of insulin. One of those, Lantus Insulin, is taken in the evening. Plaintiff was refused his evening dosage that day.

On May 17, plaintiff "was not allowed to check his blood sugar numbers." (Doc. 9, at 4.) Plaintiff was informed that the medication technician was neither "qualified nor licensed to provide injections and that the corrections staff was not allowed to deliver medications to inmates." (Doc. 9, at 4.)

During the ten days of incarceration, plaintiff was in an isolation cell and did not receive recreation or exercise. Later, Nurse Powers told plaintiff that because of plaintiff's complaints of medical problems with the Jail, "the defendant" contacted the court to have plaintiff's sentence modified to remove him from the Jail because the Jail could not appropriately care for plaintiff. (Doc.

9, at 4.) The request was granted, and plaintiff was required to pay for home confinement, which caused plaintiff financial hardship.

Dr. Smith and Dr. Bryan Davis were contacted several times over the course of plaintiff's incarceration, but no changes were made to his medical regime and no examination of plaintiff was ever done.

While at the Jail, plaintiff was denied exercise time, remained in a holding cell with the lights on continuously, and was only allowed to shower at the staff's convenience. Plaintiff's showers were separated by days at a time.

## II.     Plaintiff's Motion to Amend

Plaintiff seeks to amend his Complaint to bring an additional claim against all of the defendants. Plaintiff asserts that defendants violated "Title IV of the Health Insurance Act" by obtaining, releasing, or exchanging his personal medical information without his consent.

Under Federal Rule of Civil Procedure 15(a), after the time for amending the pleadings as a matter of course has passed, a party may amend its pleadings "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citation omitted). The court's decision to grant leave to amend a complaint is within the court's discretion. *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991).

Kansas District Court Local Rule 15.1 requires that a party seeking to amend "(1) set forth a concise statement of the amendment or leave sought; (2) attach the proposed pleading or other document; and (3) comply with the other requirements of D. Kan. Rules 7.1 through 7.6." D. Kan.

Rule 15.1. *Pro se* litigants are subject to these same requirements. *Auld v. Value Place Prop. Mgmt LLC*, No. 09-1139-EFM, 2010 WL 610690, at *14 n.79 (D. Kan. Feb. 19, 2010) (stating that the court would also deny the motion to amend for not attaching the proposed pleading and noting that a plaintiff's *pro se* status does not relieve him from complying with this court's procedural requirements).

Plaintiff's motion is a good example of why parties are required to attach the proposed amended pleading to the motion to amend. Plaintiff's motion sets forth a claim under "Title IV of the Health Insurance Act." (Doc. 54, at 1.) Perhaps plaintiff is attempting to assert a claim under the Health Insurance Portability and Accountability Act (HIPAA)?[2] In any event, the court is unclear what claims plaintiff seeks to assert. And, as is evident from defendants' responses to the motion, they too are unclear about what laws plaintiff is alleging they violated. Defendants are not required to guess the nature of plaintiff's claims.

Additionally, plaintiff's motion asserts the claim against all defendants; however, the factual allegations alleged in the current Amended Complaint do not support his claim. For example, the Amended Complaint does not allege that Dr. Davis was involved in the event giving rise to plaintiff's new claim regarding his personal medical information.

For these reasons, plaintiff's motion is denied without prejudice. Plaintiff may file a proper motion to amend if he has valid claims to assert; however, he must follow the court's rules and procedures. If plaintiff chooses to file a motion to amend his complaint, he should be mindful that he must identify the laws that he alleges the defendants violated and provide legal and factual allegations to support his claims.

---

[2] To the extent plaintiff is alleging claims under HIPAA, his claim is futile because there is no private right of action under HIPPA. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010) ("Any HIPAA claim fails as HIPAA does not create a private right of action for alleged disclosures of confidential medical information.") (citing *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006)).

### III. Defendants' Motions to Dismiss

#### a. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must present factual allegations that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The allegations must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008). "'Plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the [plaintiff 'has] not nudged [its] claims across the line from conceivable to plausible.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Under this standard, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court assumes as true all well-pleaded facts in plaintiff's complaint and views them in a light most favorable to plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

When, as here, a plaintiff is proceeding *pro se*, the court construes his or her pleadings liberally and holds the pleadings to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001). Liberal construction does not, however, "'relieve the plaintiff of the burden of alleging sufficient facts on

which a recognized legal claim could be based."' *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (quotation omitted). The court need not accept as true those allegations that state only legal conclusions. *See id*.

### b. Discussion

To sustain a cause of action based on 42 U.S.C. § 1983, a plaintiff must establish two elements: (1) that he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) that the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Baker v. McCollan*, 443 U.S. 137, 140 (1979) (finding a necessary inquiry in any § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States); *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (holding that individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) (holding that personal participation is an essential allegation in a § 1983 action).

A defendant cannot be liable under § 1983 unless he or she directly and personally participated in the alleged deprivation of the plaintiff's constitutional rights. *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Moreover, plaintiff must allege more than that a defendant was a supervisor or in charge at the Jail. A defendant cannot be held liable for money damages in a civil rights action based solely upon his or her supervisory capacity under the theory of respondeat superior. *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).

Although vague, plaintiff's ADA claim appears to arise from allegations that he was housed in a holding cell because he needed leg braces and a cane, and thus, was denied the treatment that all other inmates are entitled to—"[e]xercise, showers, day-room and personal association with

other[s]/human contact."³ (Doc. 9, at 4.) Title II of the ADA prohibits discrimination against the disabled by public entities:⁴

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Although Title II applies to state prisons, *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998), to state a claim under this title, plaintiff must allege "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Spurlock v. Simmons*, 88 F. Supp. 2d 1189, 1195 (D. Kan. 2000) (citing *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999); *Pahulu v. Univ. of Kan.*, 897 F. Supp. 1387, 1389 (D. Kan. 1995)). For purposes of the pending motions, the parties do not dispute that plaintiff is a qualified individual with a disability.

### i. Terry McClure

Plaintiff sued defendant McClure in his official capacity as administrator of the Jail, alleging defendant McClure is responsible for the actions of his subordinates and the Jail policies that led to plaintiff's claims. A plaintiff may "succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v.*

---

³ Plaintiff does not allege that he was housed in the holding cell or denied access to these benefits because of his diabetic condition.
⁴ The ADA contains multiple titles that address discrimination against persons with disabilities in various contexts. Title II is the only title of the ADA that plaintiff's allegations arguably implicate.

-8-

*Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (reviewing standards for § 1983 supervisory liability in light of *Ashcroft v. Iqbal*, 129 S. Ct. 1937; holding stricter burden on plaintiff still requires affirmative link). Plaintiff's complaint does not allege any of these elements.

First, plaintiff's allegations do not assert that defendant McClure is responsible for the policies. In fact, defendant McClure is not mentioned once in plaintiff's factual allegations. When determining whether an official is a final policymaker, the court considers whether "1) the official is meaningfully constrained by policies made by another; 2) the official's decisions are subject to meaningful review; and 3) the decisions are within the realm of the official's authority." *Meyer v. Nava*, 518 F. Supp. 2d 1279, 1286−87 (D. Kan. 2007) (citing *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995)). Under Kansas law, the Sherriff, not defendant McClure, is responsible for making policies. *See Meyer v. Nava*, 518 F. Supp. 2d 1279, 1287 (D. Kan. 2007) ("Whether an individual is a final policymaker for purposes of § 1983 liability is a legal issue to be determined by the court based on state and local law."); Kan. Stat. Ann. § 19-811 (stating that the sheriff has charge and custody of the jail). Plaintiff does not allege any facts showing that defendant McClure is responsible for the Jail policies.

Second, plaintiff does not identify any specific policy he believes caused him constitutional harm. He has failed to plead any facts demonstrating the alleged constitutional violations were the result of, or prompted by, any Jail policy or custom. Finally, plaintiff does not allege that defendant McClure acted with the state of mind required to establish the alleged constitutional deprivation, and plaintiff has not alleged any personal participation on the part of defendant McClure. For these reasons, plaintiff has failed to state a claim under 42 U.S.C. § 1983 against defendant McClure.

Defendant McClure argues that plaintiff's ADA claim against him should be dismissed because plaintiff has failed to allege he was discriminated against on the basis of his disability. (Doc. 23, at 9.) The court disagrees. Plaintiff's complaint alleges that he was housed in the holding cell because of his

need for leg braces and a cane and that because he was in the holding cell he was denied certain benefits. Under the required liberal construction, the court finds that plaintiff alleges sufficient facts on which a plausible legal claim could be based.

### ii. Greg Powers

Defendant Greg Powers requests that the court dismiss plaintiff's ADA claim against him, arguing that an individual cannot be liable under Title II of the ADA. Title II of the ADA defines "public entity" as "any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131(1). Mr. Powers does not fall within the statutory definition of a "public entity." *See Hunter v. Correct Care Solutions*, No. 07-3203-SAC, 2007 WL 2954089, at *1 (D. Kan. Oct. 10, 2007) (dismissing Title II ADA claims against individuals and a non-state entity because the defendants were not "public entities"); s*ee also Weisman v. Hill*, 629 F. Supp. 2d 106, 111 (D. Mass. 2009) ("[Title II] prohibits discrimination by 'public entities,' not by 'persons.'"). *Cf. Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999) (holding that individuals, such as employees, are not covered entities under Title I of the ADA).

As an individual, Mr. Powers cannot be held liable under Title II of the ADA. Plaintiff has failed to advance the minimal factual allegations necessary to establish that Mr. Powers qualifies as a "public entity" under Title II of the ADA, and has thus failed to state a claim against him. *See, e.g., Riggs v. Am. Heritage Life Ins. Co.*, No. 00-2433-CM, 2002 WL 989461, at *3 (D. Kan. May 6, 2002) (dismissing the plaintiff's Title II claim because she did not allege facts to establish that the defendant qualified as a "public entity").

### iii. Kristie Powers

Similar to the ADA claim against her husband, plaintiff's ADA claim against Kristie Powers also fails to state a claim for relief. The complaint alleges defendants violated the ADA by housing him in a holding cell and denying him benefits that all other inmates received. None of the factual allegations relating to Ms. Powers support defendant's ADA claim against her.

With respect to Ms. Powers, plaintiff alleges that: he was not feeling well on May 15; Ms. Powers came to the Jail to try to assist him; Ms. Powers was unable to review plaintiff's medical chart; Ms. Powers did not examine him. There are no allegations that Ms. Powers provided or denied medical services to plaintiff; that she was an employee of the Jail; that she made the decision to house plaintiff in a holding cell; or that she was responsible for denying him exercise, showers, or personal association with others. Plaintiff's allegations against Ms. Powers do not support a claim under the ADA. Finally, Ms. Powers is not liable under Title II of the ADA because she is not a "public entity." *See Hunter*, 2007 WL 2954089, at *1; *Riggs*, 2002 WL 989461, at *3.

Plaintiff's § 1983 claim against Ms. Powers also fails to state a claim for relief. To be liable under § 1983, Ms. Powers must have directly and personally participated in the alleged deprivation of plaintiff's constitutional rights. *Jenkins*, 81 F.3d at 994. Plaintiff's allegations do not support a § 1983 claim against Ms. Powers. He alleges that Ms. Powers, a non-employee of the Jail, came to the Jail once to help him with his medical needs at the request of her husband, Mr. Powers, and was unable to assist him. He does not allege facts showing that she withheld medical treatment or upheld an official policy to deny plaintiff medical treatment. He simply alleges that Ms. Powers attempted to help him with his high blood sugar, but was unable to because she could not read his medical charts. Plaintiff has not stated a § 1983 claim against Ms. Powers.

Plaintiff's ADA and § 1983 claims against Ms. Powers are dismissed.

### iv. Dr. Bryan Davis

Plaintiff's § 1983 claim against Dr. Davis alleges that he provided inadequate medical attention, and thus, acted deliberately indifferent to plaintiff's medical needs. This claim fails for two reasons. First, "[t]o constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *West v. Atkins*, 487 U.S. 42, 48 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Plaintiff has not alleged facts to show a relationship between Dr. Davis and the Jail. Plaintiff merely alleges that Dr. Davis was contacted about plaintiff's health, that no examination was conducted, and that no changes were made to plaintiff's medical regimen. Plaintiff does not provide any specific information about Dr. Davis. He does not set forth who contacted Dr. Davis, the reason Dr. Davis was contacted, why Dr. Davis was responsible for plaintiff's health, or how the Jail—the state actor—is responsible for Dr. Davis's actions. Plaintiff has failed to set forth facts alleging that Dr. Davis was acting under color of state law.

Second, alleging an inadvertent failure to provide adequate medical care is not enough. *Hurd v. McBryde*, No. 09-CV-03222, 2010 WL 4180645, at *3 (D. Kan. Oct. 20, 2010). "Rather, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*. (citing *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)). The test for deliberate indifference has both an objective and a subjective component. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

To meet the objective component of the test, the harm suffered must rise to a level "sufficiently serious" to be cognizable under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Id*. (citations omitted). To satisfy the subjective component, the prisoner must show that the prison official knew of and disregarded an excessive risk to the prisoner's health. *Mata v. Saiz*, 427 F.3d 745,

751 (10th Cir. 2005). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Although plaintiff alleges he suffered high blood pressure and Ketoacidosis, he does not link Dr. Davis's treatment, or lack thereof, to this condition. He does not allege any particular symptoms or physical injury due to Dr. Davis's lack of treatment. Again, he does not set forth who contacted Dr. Davis, when Dr. Davis was contacted, or the reason Dr. Davis was contacted. However, even if plaintiff's allegations satisfy the objective component of the test, by alleging that the harm suffered was "sufficiently serious," plaintiff has not satisfied the subjective component of the test. He does not allege facts to show that Dr. Davis was aware that a substantial risk of harm to plaintiff existed or that Dr. Davis disregarded such a risk. As explained above, plaintiff does not allege specific facts regarding Dr. Davis. The facts alleged do not set forth a plausible, rather than merely speculative, claim for relief against Dr. Davis. *Robbins*, 519 F.3d at 1247–48. Plaintiff's § 1983 claim against Dr. Davis is dismissed.

Plaintiff's ADA claim against Dr. Davis also fails. Like Mr. and Ms. Powers, Dr. Davis is not a "public entity," and thus is not liable under the ADA. Plaintiff's ADA claim against Dr. Davis is dismissed for the reasons discussed above.

**IT IS THEREFORE ORDERED** that Plaintiff's Request for Leave for Final Amendment (Doc. 54) is denied without prejudice.

**IT IS FURTHER ORDERED** that Defendant Captain Terry McClure's Motion to Dismiss (Doc. 22) is granted in part and denied in part. Plaintiff's 42 U.S.C. § 1983 claim against defendant McClure is dismissed.

**IT IS FURTHER ORDERED** that Defendant Greg Powers' Motion to Dismiss (Doc. 27) is granted. Plaintiff's ADA claim against defendant Greg Powers is dismissed.

**IT IS FURTHER ORDERED** that Separate Motion of Defendant Kristi Powers to Dismiss (Doc. 30) is granted. Plaintiff's ADA and § 1983 claims against Kristi Powers are dismissed.

**IT IS FURTHER ORDERED** that defendant Dr. Bryan Davis's Motion to Dismiss (Doc. 34) is granted. Plaintiff's ADA and § 1983 claims against Dr. Davis are dismissed.

Dated this 19th day of January, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**